John H. Pennook, J.
This proceeding was brought by the petitioner, Robert R. Meehan, a primary candidate for the office of Attorney-General nomination, under section 330 of the Election Law to declare, (1) the designation by the Democratic State Committee of the respondent, Adam Walinsky, as a candidate for the office of Attorney-General of the State of New York to be null and void, (2) and to prohibit the respondent, John P. Lomenzo, Secretary of State of the State of New York, from certifying the name of the respondent, Adam Walinsky, as a candidate to be voted on for the office of Attorney-General in the Democratic primary election on June 23,1970.
*491 The petition alleges that the respondent, Adam Walinsky, fails to meet the constitutional requirement for the office of Attorney-General by reason of the fact that he has not been a resident of this State for five years next preceding Election Day of November 3, 1970, and consequently he is ineligible to be nominated for office.
The petition further alleges that between September, 1966 and September, 1969, the respondent, Adam Walinsky, resided at 7318 Churchill Road, McLean, Virginia.
The respondent, John J. Burns, chairman, Democratic State Committee, denies the allegation of the petition and urges that the petition fail.
The respondent, Secretary of State, in effect appears to abide the event and requests the court to hear and determine the issue. It appears that this proceeding is not consistent with section 145 of the Election Law as no objections were filed with the Secretary of State. Thus we have proceeding under section 330 of the Election Law and more specifically focusing on se'etion 147 of the Election Law which reads: “ A person shall not be nominated for a public office who (1) is not a citizen of the state of New York; (2) is ineligible to be elected to such office; or (3) who, if elected, will not at the time of commencement of such office, meet the constitutional or statutory qualifications thereof.” Thus ends the discussion of procedural aspects of the proceeding as section 330 of the Election Law, and its broad provisions is the basis of this court’s jurisdiction.
The challenge of the petitioner Meehan to the validity of the respondent Walinsky candidacy is that Mr. Walinsky fails to meet the constitutional qualification for the office of Attorney-General, basically, that he has not been a resident of the State of New York five years preceding November 3, 1970, the date of general election for the State of New York for the year 1970.
The Constitution of the State of New York provides: “ Article V, Section 1. The comptroller and attorney-general shall be chosen at the same general election as the governor and hold office for the same term, and shall possess the qualifications provided in section 2 of article IV.”
Section 2 of article IV reads as follows: “ No person shall be eligible to the office of governor or lieutenant-governor, except a citizen of the United States, of the age of not less than thirty years, and who shall have been five years next preceding his election a resident of this state.”
The question raised by the petitioner in the courts is without precedent in case law although such question has been bantered about by the electorate and the news media in many instances *492 in the past. It is undoubtedly an important issue to the people of the State as well as the candidates, and particularly in this case, as the Attorney-General of the State of New York is the principal legal officer of the State and he has under his supervision and control the second largest law office in the world consisting of more than 445 legal positions of his 1,000 employees. It is readily perceived why the constitutional delegates and the people set forth the requirement of a. five-year residence, for this office similar to that for the office of Governor, Lieutenant Governor and Comptroller. (See Annual Reports of the Department of Law to the Governor and Legislature.) A search of writings on the Constitution and the various conventions fails to provide any real discussion of the reasons for the five-year residency requirement except the writings on the 1846 Convention. My reading of history of the office disclosed that in the days of the “ Crown” it was an appointive office, and since 1846 it has been an elective office in this State. The primary controversy on the office in the last century centered about the appointment or election and the. question of whether it was to be an independent office, independent of the Governor, or an advisory office of law to the Governor. The latter question has resolved itself through elections where the offices have been filled by holders of dissimilar party credentials. Thus we have much written by the various scholars and constitutional committees but nothing persuasive to enlighten the question of residency.
It appears to me that the primary question presented is the intent of the constitutional “ resident ” as used in section 2 of article IV as applied to section 1 of article V. I am sure that the framers of this provision used the term as defined in Webster ’s and generally accepted that it means one who resides in a place. Further the constitution has provided for persons in Federal employ, as the respondent Walinsky, to allow him to vote in this State. “ For the purpose of voting, no person shall be deemed to have gained or lost a residence, by reason of his presence or absence, while employed in the service of the United States ”. (N. Y. Const., art. II, § 4.) Section 151 of the Election Law has the same provision. These provisions are applicable to voting and unquestionably apply to the qualifications of a candidate for public office. It might be argued that these precise provisions would be exclusionary of a broad interpretation of the “ resident ” provision, but common sense dictates otherwise. It would seem to me that the issue of residency was left unspecified by the architects of the provision to prevent exclusion of residents who might sojourn without the State for *493 periods of time and not having any intent of abandoning their status as residents of the State. In our mobile society a great number of our State residents are compelled to reside in other States particularly in the vicinity of Washington, D. 0. Many of these people are not of great wealth and just simply lack the financial means to maintain two residences for themselves and their families. Otherwise the field of politics would be reserved to the political aristocracy who can afford as many residences as they choose. To permit such a strict construction could very well be an impermissable classification and result in discrimination between persons of equal domicile circumstances but not of equal affluence. (Schware v. Board of Bar Examiners, 353 U. S. 232.) In a mobile society where the right of movement and communication has no bounds then I see no reason why the term resident should be limited to a strict rule, but rather to a rule that permits a “ constructive residence ” which is created from a person’s presumptive intent to remain a citizen of a State. There has been no issue of constitutionality raised and I see no reason for such a review at this juncture of the proceeding.
The respondent here was not prevented from acquiring a domicile in Virginia and he undoubtedly had crossed the threshold to some extent. He moved there with his family, he registered his two automobiles there, he had obtained a Virginia driver’s license, his family attended school there, and he purchased land and made plans to build a house there. All of these acts show intent to make Virginia his permanent residence. On the other hand he was a bona fide domiciliary of New York State when he accepted a position in the United States Attorney’s office. He was engaged in the practice of law in New York City, he and his family lived in New York City, he was a member of the New York State Bar and he was historically from birth a resident of New York. Based on these facts a reasonable man could find that he had shown an intent to change his domicile but a reasonable man would also ask what other course he had. He had a family and is it not a man’s desire to have his family in close proximity. Should he have left his family in New York and communicated weekends? Would this be reasonable. I do not think so.
Now we must look to the age-old tests of domicile and residency. The case law is replete with the ingredients of domicile which are born from intent. Here are some of them. The purchase of a home, extended leasing, public documents such as mortgages reciting a residence, the joining of local organizations such as clubs, fraternal societies, a church, voting, paying *494 income taxes as a resident or nonresident. All of these tests have been employed to determine intent, the same tests can fairly be used for nonintent and I find that the respondent, Walinsky, did not cross the invisible line of residency via intent. Some of these tests he would fail, but the presumption of his residency in New York ¡State in respect to the constitutional provision of qualifications for office has not been overcome.
The following finding of facts are made by the court:
1. That the respondent, Walinsky, had a domicile and residence in New York State at 40 East 83rd Street, New York, New York, on December 31, 1964 and continued as a constructive resident at that address until September 2, 1969.
That the respondent, Walinsky, continued to maintain an address in New York State at 40 East 83rd Street, New York, New York and had personal items of clothing and periodically lived in these premises for 8 to 10 days at a time from December 31,1964 to September 2,1969.
3. That in 1964 the respondent, Walinsky, evidenced his intent to return to New York State for “ various political and personal reasons ”.
4. That on April 15,1965 the respondent, Walinsky, expressed in a letter to the New York State Department of Taxation and Finance that “ Nevertheless, we consider our domicile to be in New York State at 40 East 82nd Street, New York City.” He again reiterated this intent in letters of subsequent years.
In my opinion the respondent, Walinsky, qualifies under the resident provision, and he has remained a constructive resident of the State of New York during his sojourn to Washington, D. 'C. and Virginia, and I so determine.